Andrew N. **VANDIVIER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 83A05–0408–CR–419.

Court of Appeals of Indiana.

Feb. 24, 2005.

Transfer Denied April 28, 2005.

Edward A. McGlone, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial, Andrew N. Vandivier was convicted of Obstruction of Justice, as a Class A misdemeanor. Vandivier

now appeals and presents the following issues for our review:

1. Whether the trial court erred when it ruled that a false witness statement made by Vandivier's friend was admissible evidence.

2. Whether the State presented sufficient evidence to support the conviction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On August 2, 2002, Vandivier's wife, Christina Vandivier ("Christina"), filed for dissolution of their marriage. The court awarded temporary custody of their two young children to Christina and granted visitation rights to Vandivier. On August 28, during Vandivier's first scheduled three-hour visit, he took the children and fled to Canada. Thereafter, on September 16, 2002, the court terminated Vandivier's visitation rights. A few weeks later, as Vandivier attempted to re-enter the United States from Canada, he was arrested at the Montana border, and in December 2002, Vandivier was convicted of Interference with Custody, as a Class B misdemeanor.

On April 8, 2003, Vandivier was driving his friend Katti Clay to a local Kwik Stop to purchase some cigarettes. On the way, they began discussing his pending dissolution, and Vandivier informed Clay that he was having difficulty obtaining custody of his children. He then asked Clay to make a statement to the police indicating that Christina had falsely accused him of breaking into Christina's house to prevent him from seeing their children.[1] After

Clay agreed to his request, Vandivier drove her to the Vermillion County Sheriff's Department, where she made the following sworn, written statement:

I flag [sic] Christina Vandiv[ie]r down at Casey's ga[s] station on Sunday the 6 of April. I had asked her where [Vandivier] was because she had another guy with her. Christina said [Vandivier] was gone away for good. Christina said they were getting a divorce. I ask[ed] why [and] Christina said that he was no good. We talked a little while longer. Christina said that he was in jail. When I asked her what for[,] she had said that he was ac[c]used of breaking into her house. Christina said that she had [a] gun and her boyfriend had [fired] it off a couple of times. When I asked her if [Vandivier] had really been there she said no. But he was gone for good[,] and he couldn't have the kids. After that I asked if Christina was still living in town. Christina didn't answer. I gave Christina my number and left.

Appellant's App. at 50–51. When Clay returned to Vandivier's car, she gave him the copies of her signed statement, and he drove her home.

On April 21, 2003, Vandivier filed a petition for an emergency hearing seeking custody of his children. The next day, the State deposed Clay, and she admitted that she had fabricated the entire police statement. On June 24, 2003, the State charged Vandivier with obstruction of justice, as a Class D felony, under a theory of accomplice liability and Conspiracy to Commit Obstruction of Justice, as a Class D felony.[2] Prior to trial, the State requested a ruling on the admissibility of

---

1. Vandivier admits that at some time prior to April 8, 2003, he had been charged with Residential Entry, as a Class D felony, for breaking into Christina's house, but the record on

appeal lacks documentation of the alleged offense.

2. Subsequently, the State dismissed the conspiracy charge.

Clay's statement. After a hearing, the trial court ruled that Clay's statement was "material to the point in question," i.e., the ongoing custody battle, and, thus, constituted admissible, relevant evidence in the instant criminal case. Following trial, a jury found Vandivier guilty of obstruction of justice. Thereafter, the trial court entered judgment of conviction and sentenced him accordingly.[3] This appeal ensued.

## DISCUSSION AND DECISION

■■■ Vandivier asserts that Clay's statement is "not material to the point in question," i.e., the issue of child custody. Brief of Appellant at 5–6. But it is not clear whether Vandivier is arguing that there was insufficient evidence of materiality to sustain his conviction or that the trial court erred as a matter of law in its determination that the statement was admissible. The State argues that Vandivier waived any error in the admission of Clay's statement for failing to raise an objection to its admission at trial. We agree. "It is settled law that a party waives any objection to the admission of evidence if a contemporaneous objection was not made at trial, even if the court had made a pre-trial ruling on the admissibility of the evidence." *Reynolds/Herr v. State*, 582 N.E.2d 833, 836 (Ind.Ct.App.1991). Waiver notwithstanding, we choose to address the merits of both of Vandivier's arguments to clarify the roles of the judge and jury in making determinations of materiality in obstruction of justice cases.

Before we reach the substance of Vandivier's claims, we note that "[c]ourts and text-writers have experienced difficulty in formulating a rule by which materiality may be determined," *Davis v. State*, 218 Ind. 506, 34 N.E.2d 23, 24 (1941), and this court has never defined "materiality" in the context of an obstruction of justice case. But that term has been defined in several of our perjury cases, which are instructive.[4] Those cases have defined materiality in this context as "that which is reasonably calculated to mislead an investigation." *See Daniels v. State*, 658 N.E.2d 121, 123 (Ind.Ct.App.1995); *State v. Fields*, 527 N.E.2d 218, 220 (Ind.Ct.App. 1988); *Wilke v. State*, 496 N.E.2d 616, 618 (Ind.Ct.App.1986). Further, we have consistently held that the issue of materiality is an issue for the court to decide as a matter of law. *See e.g., Fields*, 527 N.E.2d at 220; *Wilke*, 496 N.E.2d at 618. But an examination of *United States v. Gaudin*, 515 U.S. 506, 511–14, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), leads us to the conclusion that the issue of materiality is, instead, a mixed question of law and fact.

In *Gaudin*, the United States Supreme Court held that federal constitutional law requires materiality to be submitted to the jury, provided it is an essential element of the crime of perjury. *Id.* at 522–23, 115 S.Ct. 2310; *see People v. Lively*, 470 Mich. 248, 680 N.W.2d 878, 880 (2004) (discussing *Gaudin*).[5] "The jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Gaudin*, 515 U.S. at 514,

---

**3.** Under Indiana Code Section 35–44–3–4, a person who commits obstruction of justice commits a class D felony, but, upon the State's recommendation, the trial court entered judgment of conviction against Vandivier as a Class A misdemeanor.

**4.** Indiana Code Section 35–44–2–1, the perjury statute, also contains a materiality requirement.

**5.** In *Gaudin*, the Government conceded that materiality was an element of the perjury-related offense of which the defendant was convicted.

115 S.Ct. 2310. But as the *Gaudin* Court explained, *"[i]t is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another." Gaudin*, 515 U.S. at 521, 115 S.Ct. 2310 (emphasis added). Our supreme court has recognized the voluntariness of a confession as one such example: 

> [T]he trial court must make a preliminary factual determination of voluntariness when assessing the statement's admissibility. The jury, however, remains the final arbiter of all factual issues under Article 1, Section 19 of the Indiana Constitution. Even if the court preliminarily determines that the statement is voluntary and admits it for the jury's consideration, then the defendant is still entitled to dispute the voluntariness of the statement once it is presented to the jury. Although the court has previously determined voluntariness in connection with the statement's admissibility, the jury may find that the statement was involuntarily given. If the jury makes such a determination, then it should give the statement no weight in deciding the defendant's guilt or innocence.

*Miller v. State*, 770 N.E.2d 763, 772–73 (Ind.2002); *see also Gaudin*, 515 U.S. at 525–26, 115 S.Ct. 2310 (Rehnquist, C.J., concurring).

■■■ Materiality is an essential element of the offense of perjury, *see Wilke*, 496 N.E.2d at 618, and, here, the parties have conceded that it is an essential element of the offense of obstruction of justice that the State must prove beyond a reasonable doubt. Thus, in light of *Gaudin*, we conclude that a framework similar to the one used to determine voluntariness of confessions should be applied when making determinations of materiality in obstruction of justice cases. That is, the trial court must first make a preliminary determination of materiality when assessing the admissibility of the evidence. *See Miller*, 770 N.E.2d at 772; *State v. Fodor*, 179 Ariz. 442, 880 P.2d 662, 674 (1994) (citing *Franzi v. Superior Court*, 139 Ariz. 556, 679 P.2d 1043, 1049 (1984)). If it finds the evidence admissible, it must then submit the issue to the jury for the jury to weigh the evidence and determine whether the State proved materiality beyond a reasonable doubt. *See Gaudin*, 515 U.S. at 522–23, 115 S.Ct. 2310; *Fodor*, 880 P.2d at 674. If, on the other hand, the trial court finds that the evidence is immaterial and, thus, inadmissible, the obstruction of justice charge must be dismissed. *See Richardson v. State*, 255 Ind. 655, 266 N.E.2d 51, 52 (1971) ("This Court has long recognized that if testimony alleged to be false is of no importance and immaterial it cannot be made the basis for a charge of perjury."); *see also Fields*, 527 N.E.2d at 220–21; *Fodor*, 880 P.2d at 674. With this law as our guide, we now turn to Vandivier's substantive arguments.

## Issue One: Admissibility of Clay's Statement

■■■ Vandivier first contends that the trial court erred by admitting Clay's statement at trial. Generally speaking, relevant evidence is admissible, and irrelevant evidence is inadmissible. Ind. Evidence Rule 402; *see Majors v. State*, 748 N.E.2d 365, 368 (Ind.2001). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401; *see Majors*, 748 N.E.2d at 368. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and a reviewing court will reverse only upon an abuse of that discretion. *B.K.C. v. State*, 781 N.E.2d 1157, 1162 (Ind.Ct.App.2003). An

abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances. *Bryant v. State*, 802 N.E.2d 486, 494 (Ind. Ct.App.2004), *trans. denied.* When reviewing a trial court's decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the trial court's decision. *B.K.C.*, 781 N.E.2d at 1162.

 Here, the trial court issued a written order allowing Clay's statement to be admitted into evidence and explained its decision as follows:

> [A]ssuming the Defendant induced Clay to make the statement at issue, the Defendant, through Clay, initiated the situation. The false statement of Clay that [Christina] lied about the Defendant burglarizing [Christina's] home is material to the point of both the criminal charge of burglary and to the pending custody issue, which is the basis of the instant charge.
>
> The Defendant correctly assumed that having a pending burglary charge against him could be a relevant factor in his custody battle. From his perspective, such a pending charge could [a]ffect his ability to obtain custody and/or parenting time with his children. Clearly, the false statement of Clay could mislead a public servant—the trial judge in the custody hearing.
>
> The Court finds that the statement in [ ] question could constitute the crime of obstruction with regard to both the burglary investigation and the pending custody hearing. Therefore, the statement is admissible as relevant in the criminal case of [o]bstruction of [j]ustice for the pending [dissolution] proceedings and, in fact, is material to the point in question.

Appellant's App. at 66.

Common sense dictates that pending criminal charges against a party to a dissolution would make it less likely for that party to be awarded custody of his or her children, and Clay's statement, as fabricated exculpatory evidence relating to Vandivier's pending burglary charge, had the capacity to mislead the dissolution court regarding its custody decision. *See Daniels*, 658 N.E.2d at 123 (defining materiality as "that which is reasonably calculated to mislead an investigation"). Accordingly, the trial court did not abuse its discretion when it determined that Clay's statement was material and admitted the statement as relevant evidence at Vandivier's trial.

### Issue Two: Sufficiency of the Evidence

 Vandivier next asserts that the State presented insufficient evidence to support his conviction for obstruction of justice. In reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Jenkins v. State*, 809 N.E.2d 361, 368 (Ind.Ct.App.2004), *trans. denied.* Instead, we look to the evidence and reasonable inferences that support the verdict and affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found that the defendant was guilty beyond a reasonable doubt. *Id.* While we seldom reverse for insufficient evidence, in every case where that issue is raised on appeal we have an affirmative duty to make certain that the proof at trial was, in fact, sufficient to support the verdict beyond a reasonable doubt. *Bunting v. State*, 731 N.E.2d 31, 35 (Ind.Ct.App.2000), *trans. denied.* The Due Process Clause of the United States Constitution protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *B.K.C.*, 781 N.E.2d at 1163 (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

To convict Vandivier of obstruction of justice, the State was required to prove that Vandivier "[made], present[ed], or use[d] a false record, document, or thing, with the intent that the record, document, or thing, material to the point in question, appear in evidence in an official proceeding or investigation to mislead a public servant." Ind.Code § 35–44–3–4(a)(4). Here, the State sought to convict Vandivier as an accomplice. To do so, the State needed to prove that Vandivier knowingly or intentionally aided, induced, or caused another person to commit obstruction of justice, regardless of whether that other person had been prosecuted, convicted or acquitted of that offense. *See* Ind.Code § 35–41–2–4; *Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind.2000). There is no separate crime of being an accessory or aiding and abetting the perpetrator of a crime; rather a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. *Turner v. State,* 755 N.E.2d 194, 198 (Ind.Ct. App.2001), *trans. denied.* The individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Id.* The accomplice need not participate in each and every element of the crime in order to be convicted of it. *See Hodge v. State,* 688 N.E.2d 1246, 1248 (Ind.1997).

In determining whether a person aided another in the commission of a crime, our supreme court has long considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *See Garland v. State,* 788

N.E.2d 425, 431 (Ind.2003). While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. *Hodge,* 688 N.E.2d at 1248. In order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may reasonably be drawn. *Peterson v. State,* 699 N.E.2d 701, 706 (Ind.Ct.App.1998).

At trial, Clay testified that (1) Vandivier asked her to fill out a police statement indicating that Christina had falsely accused him of breaking into her house so that Christina would "look bad," the residential entry charge would be dropped, and he could obtain custody of his children, Transcript at 103; (2) Vandivier drove her to the police station after she agreed to assist him; and (3) everything in her sworn, written police statement had been fabricated. The State also presented evidence that Vandivier filed a petition for an emergency hearing seeking custody of the children after Clay had made her statement and that any criminal allegation would be a significant factor in the dissolution court's custody determination. The State presented ample evidence that Vandivier, through Clay, made a statement that was deceptive and would have influenced the court's custody determination. From that evidence, the jury could have drawn the reasonable inference that Clay's statement was calculated to mislead the dissolution court.[6] Vandivier's

6. Vandivier's argument that Clay's statement is not material to the issue of custody because the statement might have been excluded as

inadmissible hearsay at the dissolution proceedings is without merit. "The State is not required to prove actual impairment of the

argument amounts to a request that we reweigh the evidence and assess witness credibility, which we cannot do. We conclude that the State presented sufficient evidence to support Vandivier's conviction for obstruction of justice.

## CONCLUSION

The issue of materiality in obstruction of justice cases is a mixed question of law and fact which is analyzed using a two-tiered framework. In this case, the trial court did not abuse its discretion when it admitted Clay's statement, and the evidence was sufficient to support Vandivier's conviction for obstruction of justice.

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.

investigation." *Wilke*, 496 N.E.2d at 618. "Mere potential influence with a line of inquiry is sufficient to establish materiality." *Id.*

(quoting *United States v. McComb*, 744 F.2d 555, 563 (7th Cir.1984)).