### Stephen Clark WIELAND, Defendant–Appellant,

v.

### STATE of Indiana, Plaintiff–Appellee.

### No. 49S00–9908–CR–423.

Supreme Court of Indiana.

Oct. 13, 2000.

See also, *Boyce v. State,* 736 N.E.2d 1206 (Ind.2000).

Gregory Bowes, Indianapolis, Indiana, for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy

**2.** IND. CODE § 35–42–1–1(2); IND. CODE § 35–42–5–1.

**3.** IND. CODE § 35–42–5–1.

Attorney General, Indianapolis, Indiana, for Appellee.

DICKSON, Justice

The defendant, Stephen Clark Wieland, was convicted of the January 3, 1998, felony murder[2] of Gary Hoffman; robbery, a class A felony;[3] attempted robbery, a class A felony;[4] conspiracy to commit robbery, a class A felony;[5] and two counts of criminal confinement, class B felonies.[6] This appeal raises two issues: sufficiency of the evidence and double jeopardy.

**Sufficiency of the Evidence**

Wieland contends that the evidence presented at trial was insufficient to support his convictions for felony murder, robbery, attempted robbery, conspiracy to commit robbery, and confinement. He urges that the evidence did not show that he participated in these offenses any more than to witness them and fail to prevent them.

In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000); *Webster v. State,* 699 N.E.2d 266, 268 (Ind.1998); *Hodge v. State,* 688 N.E.2d 1246, 1247–48 (Ind.1997).

Wieland's convictions arise from an episode that occurred at an Indianapolis Village Pantry convenience store. The principal evidence consisted of the store surveillance camera videotape recording of the event and the testimony of the two store clerks present at the time of

**4.** IND. CODE § 35–41–5–1; IND. CODE § 35–42–5–1.

**5.** IND. CODE § 35–41–5–2; IND. CODE § 35–42–5–1.

**6.** IND. CODE § 35–42–3–3.

the robbery, a passerby who arrived as the crime concluded, a police detective, and co-defendant Larry Boyce.[7] The facts favorable to the judgment show that Wieland and his companions, Boyce and Casey Priest, were talking on Boyce's father's porch. At one point, a discussion of Wieland's loyalties to Priest took place, and Priest challenged Wieland to steal some popcorn and a drink from a nearby Village Pantry convenience store. As they walked across the store parking lot, Priest said: "Watch my back, I'm gonna get 'em." Record at 219. Wieland understood this to mean that Priest intended to commit a robbery. Wieland and Boyce knew Priest was armed with a handgun. The three entered the store and selected various items. Then they approached the checkout counter, and Priest pointed a handgun at Michael Graham, a store clerk, and told another store employee, Gloria Wallace, who was facing away from Priest, not to turn around. Then Priest told Graham that he wanted "all the money." Record at 171. Holding Graham at gunpoint, Priest walked him over to the cash register, and Graham opened the register and gave Priest its contents. Wieland and Boyce watched the robbery, and the three left the store together, with Wieland and Boyce exiting first with the food they had taken without purchase. As Priest exited, he encountered a grocery deliveryman, Gary Hoffman, and after demanding his money at gunpoint, Priest shot and killed him before he responded. Wieland and Boyce were seen laughing as they began to run after exiting the store. After returning to Boyce's father's house, the three men ate the food they had stolen, and Priest gave Wieland and Boyce some of the money taken from the cash register. Soon thereafter, Priest and Boyce fled to Illinois.

The State's case was based primarily upon the criminal liability of Wieland and Boyce as Priest's accomplices. Wieland acknowledges that he can be held accountable for the acts of others done in furtherance of a jointly undertaken criminal activity. He points to evidence that he "wasn't sure really" what Priest meant when he spoke of his intention to rob the store. Record at 228. Wieland argues that there was no evidence that he "actively participated" in the crimes, other than his presence, and that Priest was acting on his own, both as to the robbery of Graham and as to the attempted robbery and murder of Hoffman.

 Under the accomplice liability statute, a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." IND. CODE § 35–41–2–4. Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Edgecomb v. State*, 673 N.E.2d 1185, 1193 (Ind.1996); *Johnson v. State*, 490 N.E.2d 333, 334 (Ind.1986). While the defendant's presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the trier of fact may consider them along with the factors above to determine participation. *Echols v. State*, 722 N.E.2d 805, 807 (Ind.2000); *Burkes v. State*, 445 N.E.2d 983, 987 (Ind.1983); *Harris v. State*, 425 N.E.2d 154, 156 (Ind.1981). Furthermore, accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action. *McGee v. State*, 699 N.E.2d 264, 265 (Ind.1998). An

---

7. Boyce and Wieland were tried as co-defendants in the same trial. Boyce was also con-

victed, and we decide his direct appeal today. *Boyce v. State*, 736 N.E.2d 1206 (Ind.2000).

accomplice may be held accountable for a murder performed by another during the person's departure from the crime scene. *See, e.g., Seeley v. State,* 544 N.E.2d 153, 156–57 (Ind.1989) (conviction for felony murder of victim intentionally killed by accomplice during escape); *Mauricio v. State,* 476 N.E.2d 88, 92 (Ind.1985) (conviction for felony murder where accomplice killed victim after defendant had already left scene in snowmobile stolen from victim). *But cf. Kelly v. State,* 719 N.E.2d 391, 396 (Ind.1999) (upholding trial court's judgment on the evidence notwithstanding a jury verdict finding a defendant guilty of murder where sole evidence established that the killing was spontaneous after the defendant had left the scene).

■ Applying our standard of review, considering only the probative evidence that supports the judgment, we find that the evidence was sufficient. As Priest's companion, Wieland accompanied him into the store, knowing that Priest was armed and intended to rob the store. Wieland did nothing to oppose the commission of any of the crimes. He did not withdraw from the enterprise. To the contrary, he entered the store with Priest, personally took store merchandise, stood nearby Priest and watched as Priest confined the store employees and committed robbery, left the store and escaped from the scene in the company of Priest, and later shared in the money obtained by Priest in the robbery. From this evidence, a reasonable trier of fact could have determined beyond a reasonable doubt that Wieland was guilty based on accomplice liability of robbery, felony murder, attempted robbery, and two counts for confinement.

■ Wieland also challenges the sufficiency of the evidence supporting his conviction for conspiracy to commit robbery, arguing that the State did not show an agreement existed between Priest and Wieland. A person commits the crime of conspiracy when: (1) with intent to commit a felony; (2) the person agrees with another person to commit the felony; and (3) an overt act is performed by the defendant or the person with whom the defendant made the agreement in furtherance of that agreement. IND. CODE § 35–41–5–2. In proving the agreement element, the State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence. *Bailey v. State,* 717 N.E.2d 1, 3 (Ind.1999).

■ Applying our standard of review, we find the evidence was sufficient to support Wieland's conviction for conspiracy to commit robbery. Wieland and Priest agreed to steal food from the store. Knowing that Priest carried a handgun, Wieland understood Priest's instructions, "Watch my back, I'm gonna get 'em," to mean that Priest intended to commit robbery. Wieland did not withdraw from the enterprise, and Priest proceeded to enter the store while armed to commit the robbery. From these facts, a reasonable factfinder could have found beyond a reasonable doubt that Wieland, with the intent to commit robbery, agreed with Casey Priest to commit the robbery, in furtherance of which Priest performed the charged overt act of entering the store armed with a handgun.

## Double Jeopardy

Wieland contends that the trial court improperly imposed multiple punishments for the same offense, contrary to the Double Jeopardy Clause, Article I, Section 14, of the Indiana Constitution, and thus he cannot be convicted: (1) of felony murder and either the robbery of Graham or the attempted robbery of Hoffman; (2) of both conspiracy to commit robbery and the robbery of Graham; or (3) of both the robbery of Graham and either confinement count. He also contends that some of his sentencing enhancements violate double jeopardy principles.

■ The State concedes that Wieland cannot be sentenced for both felony murder and the underlying felony, but ar-

gues that he can be sentenced for both the felony murder based on the robbery of Graham and for the attempted robbery of Hoffman. Having found Wieland guilty on Count 2 (felony murder of Hoffman in the course of the robbery of Graham) and Count 4 (felony murder of Hoffman in the course of the attempted robbery of Hoffman), the trial court declared the latter merged into the former.[8] Thus, Wieland stands convicted and sentenced on the Count 2 felony murder charge. We accept the State's concession that Wieland's conviction in Count 3 (robbery of Graham) must be vacated due to his felony murder conviction in Count 2 based on the same robbery. Our analysis of Wieland's claim of double jeopardy under the Indiana Constitution is governed by *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), which describes two components, the statutory elements test and the actual evidence test. *Id.* at 49. Two offenses are the "same offense" in violation of Article I, Section 14 of the Constitution if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* The defendant argues that the remaining convictions violate the actual evidence test. To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

▮▮▮▮ Wieland urges that, before combining the two felony murder charges, Counts 2 and 4, we should merge Count 5, the attempted robbery of Hoffman, with Count 4, felony murder in the course of the Hoffman attempted robbery. We de-

cline this request and view the trial court's sentencing order regarding the merger of Count 4 into Count 2 as having the effect of vacating the conviction for Count 4. This renders moot any claim of double jeopardy by reason of convictions for Counts 4 and 5. Furthermore, Wieland's convictions for both the attempted robbery of Hoffman (Count 5) and the felony murder of Hoffman in the course of the robbery of Graham (Count 2) do not violate the double jeopardy actual evidence test. Wieland does not demonstrate that there is a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both offenses.

▮▮▮▮ Our determination, noted above, that Count 3 (robbery of Graham) must be vacated due to Count 2 (felony murder in the course of the robbery of Graham), renders moot Wieland's claimed double jeopardy violation from his convictions on Count 3 (robbery of Graham) and Count 6 (conspiracy to commit the robbery of Graham). Although not raised in this appeal, we also find no double jeopardy violation with respect to Wieland's convictions on both Count 5 (attempted robbery of Hoffman) and Count 6 (conspiracy to commit robbery of Graham). Because the case was tried to the bench, without a jury, the trial judge was guided by the language of the charging instrument. As to the essential elements of the conspiracy charge, Count 6 alleged that Wieland, Boyce, and Priest agreed with each other to commit the robbery of Graham and that Priest's entry into the convenience store while armed with a handgun constituted the requisite overt act in furtherance of the agreement. The trial evidence used to establish that Wieland agreed to participate in the convenience store robbery and that Priest committed the overt act charged does not prove the attempted robbery of Hoffman. Likewise, the attempted robbery evidence (that Wieland was an accomplice of Priest

---

8. The sentencing order merely stated that Count 4 "merges with" Count 2, Record at 287, but the Abstract of Judgment signed by the trial court specifies, "Count 4 merges into Count 2." Record at 22.

who, while exiting the store at the conclusion of the robbery of Graham, encountered Hoffman, pointed a gun at him, and demanded his money) does not establish the essential elements of Wieland's conspiracy to commit the robbery of Graham. We conclude that there is no reasonable possibility that the evidentiary facts used by the court to establish the essential elements of one of the two offenses were also used to establish the other.

 Wieland also claims that a violation of double jeopardy results from his convictions on Counts 7 and 8 (the confinements of Graham and Wallace) given his convictions on Counts 3 (robbery of Graham) and Count 6 (conspiracy to commit robbery of Graham). As to Count 3, which cannot stand for other reasons noted above, the claim is moot. With respect to Count 6, Wieland's argument is that the evidence proving his confinements of Wallace and Graham was the same evidence used to prove conspiracy to commit robbery. We note, however, that the evidence used to prove Wieland's conspiracy to commit robbery did not require that the robbery be completed. It only required an initial agreement and the overt act of initial entry into the store. Thus the evidence of the subsequent confinement was not used to establish the conspiracy. Likewise, the evidence used to prove the confinements of the store clerks did not establish the elements of the conspiracy, which concluded when Priest first entered the store.

 Although not expressly presented, we address whether the Indiana Double Jeopardy Clause's prohibition of multiple punishments for the same offense is violated by: (a) Wieland's convictions on both Count 6 (conspiracy to commit robbery of Graham) and Count 2 (felony murder in the course of robbery of Graham), and (b) Wieland's convictions for either Counts 7 and 8 (the confinements of Graham and Wallace) and also Count 2 (the felony murder of Hoffman based on the robbery of Graham).

Because of the strong probative value of the surveillance videotape in showing the joint actions of the three men during the crimes in the convenience store, we conclude that there is no reasonable possibility that the fact-finder used the evidentiary facts proving the robbery of Graham (one component of the Count 2 felony murder charge) to also prove the essential elements of conspiracy. This latter offense was separately established by the evidence of Wieland's agreement with Priest to commit the robbery and the overt act of Priest's entry into the store while armed. It did not rest on the conduct of men inside the store. Likewise, proof of the conspiracy could not have been used to establish the essential elements of the completed robbery, as necessary to constitute Count 2 (felony murder).

 As to the confinement charges, however, we find that Count 7 is the same offense under the actual evidence test in violation of the Indiana Double Jeopardy Clause. The evidence used to prove Count 2 (felony murder of Hoffman in the course of the robbery of Graham) included Priest's use of a handgun to walk Graham to the cash register. These evidentiary facts were also used to establish Count 7 (the confinement of Graham). Count 7 must therefore be vacated. As to Count 8, however, we find no violation of the Indiana Double Jeopardy Clause. The evidence used to prove Wieland's accomplice liability for the felony murder based on the robbery of Graham included Priest's gunpoint demand for money from Graham, which did not occur until after the confinement of Wallace was completed. Likewise, the evidence used to prove Priest's confinement of Wallace included Priest's brandishing a weapon and ordering Wallace not to turn around. But at this point, there had been no demand for money or property. This evidence thus did not establish the elements of robbery from which the felony murder conviction resulted.

██ Wieland's final state double jeopardy contention is that his convictions for conspiracy and attempted robbery cannot stand as class A felonies based on the death of Hoffman, for which he is already being punished by his conviction and sentence for felony murder. The State responds that Wieland is correct on this point. We note that Wieland's convictions on the surviving Counts 5 and 6 were entered as class A felonies on the basis of resulting serious bodily injury, specifically the death of Hoffman. We therefore elect to remedy the violation by reducing these convictions to a less serious form of the same offense shown by the evidence. *See Richardson,* 717 N.E.2d at 54. These counts charging the attempted robbery of Hoffman and the conspiracy to commit robbery of Graham each constitute a class B felony if committed while armed with a deadly weapon,[9] which was clearly shown by the evidence. We revise his convictions on Counts 5 and 6 from class A to class B felonies and order the presumptive ten year sentence for each conviction.[10] Because the trial court ordered Count 6 to be served consecutively to Counts 2, 3, 4, and 5 (which were ordered served concurrently with each other),[11] we do likewise, and this modification reduces Wieland's aggregate sentence from 95 to 75 years.

### Conclusion

We affirm Wieland's convictions in Count 2 (felony murder), Count 5 (attempted robbery), Count 6 (conspiracy to commit robbery), and Count 8 (confinement). We hold that the trial court's merging of Count 4 with Count 2 operates to vacate the conviction on Count 4, and we vacate Wieland's conviction on Count 3 (robbery of Graham) and Count 7 (confinement of Graham). We revise his convictions on Counts 5 and 6 from class A felonies to class B felonies and impose the presumptive ten year sentence. In all other respects the judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

9. IND. CODE § 35–42–5–1.

10. IND. CODE § 35–50–2–5.

11. The defendant asserts that that trial court's sentencing order directs the sentence in Count 6 to be served concurrently with the sentences in Counts 2, 3, 4, and 5, but the defendant also notes that the Chronological Case Summary and Abstract of Judgment direct that the sentence in Count 6 is to be served consecutively. As to the sentencing statement, the defendant is incorrect. After explaining its reasons, the trial court expressly directs that the sentence for Count 6 "shall run consecutively" to the sentence imposed in Count 2. Record at 287.