## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2017, 9:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyler Bishop Smiley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 14, 2017 <br><br> Court of Appeals Case No. 70A01-1706-CR-1394 <br><br> Appeal from the Rush Superior Court <br><br> The Honorable Brian D. Hill, Jr., Judge <br><br> Trial Court Cause No. 70D01-1605-F5-386 |

**Altice, Judge.**

## Case Summary

Following a jury trial, Tyler Smiley was convicted of possession of methamphetamine as a Level 6 felony. On appeal, Smiley argues that the State presented insufficient evidence to support his conviction.

We affirm.

## Facts & Procedural History

The facts most favorable to the conviction follow. On September 25, 2015, undercover narcotics officer Alan Wombolt of the Rushville Police Department received information from a confidential informant (CI) that Dustin Messer was looking to sell methamphetamine.[1] Officer Wombolt and the CI set up a controlled buy to purchase one gram of methamphetamine for $120 from Messer. The CI made arrangements for Officer Wombolt to meet Messer at a local Village Pantry. Prior to the controlled buy, Officer Wombolt made copies of the buy money and put on a listening device. Detective Alex Shaver also participated in the controlled buy by conducting surveillance from a vehicle positioned so that he could watch the transaction.

Around 3:45 p.m., Officer Wombolt rode a bicycle to the Village Pantry, and when he arrived, he saw Messer standing outside. Officer Wombolt approached Messer and gave him $120. After Messer took the money, he told Officer Wombolt that he had to go to the silver car behind him "to get the meth

---

[1] Officer Wombolt had previously dealt with Messer during a controlled buy of hydrocodone pills.

from his dude." *Transcript* at 19. According to Messer, he did not have methamphetamine to sell, so he called Smiley, who agreed to meet him at the Village Pantry to give him methamphetamine.

[5] As Messer walked over to the silver vehicle, Officer Wombolt noted that there were three male individuals in the car, one of whom he recognized as Smiley, who was sitting in the front passenger seat. Detective Shaver also recognized Smiley as the front-seat passenger. Messer knew all three occupants of the car, although he testified that he expected to see only Smiley.

[6] Messer entered the vehicle from the rear passenger side. Messer testified that after he got into the car, Smiley, who was "kind of tripped out", reached into the back of the car and tried to grab his chest to check for a wire. *Transcript Vol. II* at 61. Messer also testified that Smiley questioned him as to whether he had dealt with Officer Wombolt before. After Messer explained that he had prior involvement with Officer Wombolt, Messer gave the money he received from Officer Wombolt to the individual sitting in the back seat of the car. That individual then gave the methamphetamine to Messer.

[7] While Messer was in the car, Officer Wombolt observed the occupants of the vehicle turn to the center of the vehicle and engage in a conversation. A minute or so later, Messer exited the car, walked over to Officer Wombolt, and handed him a small, clear baggie that contained a "crystal-like rock substance" that was later determined to be methamphetamine. *Transcript Vol. II* at 21.

On May 25, 2016, the State charged Smiley with dealing in methamphetamine as a Level 5 felony and possession of methamphetamine as a Level 6 felony. A jury trial was held on May 9, 2017, at the conclusion of which the jury found Smiley not guilty of dealing in methamphetamine but guilty of possession of methamphetamine. Smiley was sentenced to eighteen months, with one year to be served on home detention and six months of probation. Additional facts will be provided as necessary.

## Discussion & Decision

Smiley argues that the State presented insufficient evidence to support his possession of methamphetamine conviction. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

It is not necessary, however, that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). "A verdict may be sustained based on

circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt." *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000). Although presence at a crime scene alone is insufficient to sustain a conviction, presence combined with other facts and circumstances, including the defendant's course of conduct before, during, and after the offense, may raise a reasonable inference of guilt. *Id.*

[11] Ind. Code § 35-48-4-6.1 provides that "[a] person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine." To prove these elements, the State is required to show that the defendant had either actual or constructive possession of the methamphetamine. On appeal, Smiley argues that the State failed to establish his constructive possession of the methamphetamine. The State argues that Smiley's argument is misplaced because it "ignore[s] Smiley's liability based on his role as an accomplice." *Appellee's Brief* at 10.

[12] Instead of trying to prove that Smiley constructively possessed methamphetamine, the State presented evidence to show that Smiley was guilty of the charged conduct based on accomplice liability. Indeed, upon the State's request, the jury was instructed on accomplice liability. Under accomplice liability, an individual is guilty of an offense if he "knowingly or intentionally aids, induces, or causes another person to commit an offense." Ind. Code § 35-41-2-4. Under this statute, an individual who aids another person in

committing a crime is as guilty as the actual perpetrator. *Specht v. State*, 838 N.E.2d 1081, 1093 (Ind. Ct. App. 2005), *trans. denied*. The statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. *Id*. at 1092. Thus, a person can be charged as a principal and convicted as an accomplice. *Id*.

[13] Furthermore, a person can be convicted as an accomplice even if he did not participate in each and every element of the crime. *Id*. at 1093. Our Supreme Court has identified four factors that can be considered by the fact-finder in determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000).

[14] It is undisputed that Smiley was at the scene of the controlled buy. Officer Wombolt, Detective Shaver, and Messer all identified Smiley as the individual in the front passenger seat of the car that Messer entered to obtain the methamphetamine. The record also reveals that Messer and Smiley had known each other for years, and when Messer needed to obtain methamphetamine, he contacted Smiley and they agreed to meet at the Village Pantry so that Messer could obtain the methamphetamine to sell to Officer Wombolt. Smiley's conduct of checking Messer for a wire and questioning Messer about previous interactions with Officer Wombolt before Messer handed over the money and obtained the methamphetamine from the backseat passenger lead to a

reasonable inference that Smiley was aware of what was taking place and took measures to keep from being caught. Thereafter, Smiley did nothing to oppose the exchange of money and methamphetamine between Messer and the backseat passenger.

[15] Even though Smiley did not participate in the exchange, Messer's actual possession of methamphetamine would not have occurred but for Smiley's involvement. As noted above, Messer did not have methamphetamine to sell to Officer Wombolt, so he contacted Smiley to obtain methamphetamine. Smiley showed up at the Village Pantry with two other individuals that Messer did not anticipate being with Smiley and one of those individuals gave Messer methamphetamine. This evidence and the reasonable inferences that can be drawn therefrom sufficiently prove that Smiley knowingly or intentionally aided, induced, or caused Messer to possess methamphetamine.[2] *Cf. Schaaf v. State*, 54 N.E.3d 1041, 1043-44 (Ind. Ct. App. 2016) (affirming a dealing conviction on the basis of accomplice liability where defendant, who did not participate in the transaction, was present at the scene, suggested the meeting

---

[2] Contrary to Smiley's argument in his reply brief, the jury's not-guilty verdict on the dealing charge did not preclude his conviction as an accomplice on the possession charge. Although the verdicts may seem inconsistent, such claims are not subject to appellate review. *See McWhorter v. State*, 993 N.E.2d 1141, 1146 (Ind. 2013). Instead, we tolerate inconsistent verdicts, acknowledging that they conceivably could be "'due to a compromise among disagreeing jurors, or to expeditiously conclude a lengthy deliberation, or to avoid an all-or-nothing verdict, or for other reasons.'" *Id.* (quoting *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010)). Accordingly, the fact that the jury acquitted Smiley of the dealing charge is immaterial to the question of whether there was sufficient evidence to find him guilty of possession of methamphetamine on the basis of accomplice liability.

place for the drug transaction, and sat calmly as the exchange occurred in his truck).

[16] Judgment affirmed.

Baker, J. and Bailey, J., concur.